UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>AGRON MITCHELL SIMPSON,<br><br>    Defendant. | Criminal No. 3:00-cr-00246 |

**DEFENDANT'S SENTENCING MEMO**

NOW COMES Defendant Agron Mitchell Simpson and submits this memorandum of law in support of sentence reduction.

    1.    <u>Defendant's Original Sentence</u>.  On 24 January 2001 Mr. Simpson pled guilty to conspiracy to possess cocaine and cocaine base with intent to distribute, a violation of United States Code Title 21, Sections 841(b)(1)(A) and 846.

    2.    On 17 May 2001 this Court sentenced Mr. Simpson by applying the then-mandatory United States Sentencing Guidelines.

    3.    The base offense level was 36, with a two-level increase for possession of a dangerous weapon and a three-level reduction for acceptance of responsibility.  With a total offense level of 35 and a criminal-history category of IV, the resulting sentencing range was 235-293 months.  The Court imposed a sentence of 235 months, the lowest possible sentence under the mandatory guidelines.

    4.    <u>Application of the Amended Sentencing Guidelines</u>.  The Defendant agrees with the Probation Office that applying a 2-level reduction would result in a sentencing range of 188-235

months under the now-advisory guidelines.

5. The United States Sentencing Commission has amended Guideline 1B1.10 in an attempt to limit the courts' ability to reduce sentences by more than two offense levels. The revised guideline would prohibit a court from reducing a defendant's imprisonment to less than the minimum of the recalculated guideline range, which is to be determined only by substituting the amended guideline for the prior version and leaving all other guideline decisions the same as before.

6. However the Commission lacks the power to limit this Court's sentencing discretion for at least two reasons. First, the Court has a statutory duty under United States Code Title 18, Section 3582(c)(2), to consider the Section 3553(a) sentencing factors in imposing a new sentence. Second, the Commission's instruction to courts to treat Guideline 1B1.10 as mandatory is a violation of *Booker*.

7. Guideline 1B1.10 attempts to limit a court's ability to resentence a crack defendant according to the statutory sentencing factors set out in Section 3553(a). In particular, Guideline 1B1.10 would require the Court to grant, at most, a 2-level reduction in every case, even if the resulting sentence would still be greater than necessary to serve the purposes of sentencing, would create unwarranted disparity, or would otherwise contradict an applicable 3553(a) factor. Nevertheless, Section 3582(c)(2) imposes a statutory mandate that the Court must "[consider] the factors set forth in section 3553 (a) to the extent that they are applicable" when reducing a sentence. The Commission's attempt to dictate policy cannot trump a statutory obligation. *See Stinson v. United States*, 508 U.S. 36, 38, 44, 45 (1993) (guidelines, policy statements, and commentary must yield to the plain meaning of a statute).

8. Furthermore, treating Guideline 1B1.10 or any other part of the guidelines as mandatory would violate *Booker*. The "Guidelines are only one of the factors to consider when

imposing sentence." *Gall v. United States*, 128 S. Ct. at 602. The Guidelines, "formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough v. United States*, 128 S. Ct. at 564.

9. Since 12 January 2005, anytime that a Court gives a defendant a new sentence, that sentence must comply with *Booker*. *See, e.g., United States v. Gutierrez-Ramirez*, 405 F.3d 352, 359 46 n.14 (5th Cir. 2005) (where sentence is vacated for error in applying guidelines, court must correct error and also apply guidelines as advisory at resentencing); *United States v. Gleich*, 397 F.3d 608, 615 (8th Cir. 2005) (remanding case for resentencing following guideline application error, at which "the district court shall apply the advisory guideline regime").

10. Applying the same advisory scheme in a 3582(c)(2) resentencing is the only logical course of action. To impose a new sentence based on a mandatory scheme that was found to violate the Sixth Amendment would make that unconstitutionality part of the new sentence. Paraphrasing a Ninth Circuit conclusion that *Booker* applies to 3582(c)(2) proceedings: "Booker was not a mere statutory change which can be set aside to allow us to pretend it is [2001] for the purpose of modifying [Mr. Simpson's] sentence; rather, it provides a constitutional standard which courts may not ignore by treating Guidelines ranges as mandatory in any context." *United States v. Hicks*, 472 F.3d 1167, 1173 (9th Cir. 2007).

11. <u>*Booker* Considerations</u>. In its most recent cases, the Supreme Court has made clear that Section 3553(a) is the controlling sentencing law and has rejected various devices that were used after *Booker* to maintain a de facto mandatory guideline system. See *Rita v. United States*, 127 S. Ct. 2456 (2007); *Kimbrough v. United States*, 128 S. Ct. 558 (2007); *Gall v. United States*, 128 S. Ct. 586 (2007).

12. This Court is free to "conclude that the guideline sentence fails to reflect § 3553(a)

considerations, reflects an unsound judgment, does not treat defendant characteristics in the proper way, or that a different sentence is appropriate 'regardless.'" *Rita*, 127 S. Ct. at 2468.

13. In Mr. Simpson's case, a sentence at the bottom of the new advisory guideline range–188 months–would still be overly harsh. *See, e.g., United States v. Stockton*, 968 F.2d 715, 721 (8th Cir 1992) (Bright, Senior Judge, concurring) (guideline sentence of 20 years for drug offender is "excessively long," "greater than necessary," and "cannot be justified in a civilized society"); *United States v. Andruska*, 964 F.2d 640, 646-47 (7th Cir. 1992)(Will, Senior Judge, concurring) ("the irrationality and draconian nature of the Guidelines sentencing process is again unhappily reflected in this case"); *United States v. England*, 966 F.2d 403, 410 (8th Cir. 1992)(Bright, J., concurring)(the "draconian" sentences in this drug case "emanate from a scheme gone awry"); *United States v. Harrington*, 947 F.2d 956, 964 (D.C. Cir. 1991) (Edwards, J., concurring) (the guidelines "often produce harsh results that are patently unfair because they fail to take account of individual circumstances"); *United States v. Molina*, 963 F.Supp. 213, 215 (E.D.N.Y. 1997)(commenting on "[t]he all-too-familiar harshness required by rigid federal Guidelines...and the depredations they wreak upon individual defendants and their families").

14. <u>Sufficient-but-not-greater-than-necessary Mandate</u>. The Supreme Court has noted that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Even when the Sentencing Guidelines were mandatory, they did not "displace the traditional role of the district court in bringing compassion and common sense to the sentencing process. . . . [D]istrict courts should not hesitate to use their discretion in devising sentences that provide individualized justice." *United States v. Williams*, 65 F.3d 301,

309-310 (2d Cir. 1995); *see also United States v. Cawthorn*, 429 F.3d 793, 802 (8th Cir. 2005) (district court's duty is to tailor the sentence of each defendant).

15. In sentencing a particular defendant, Congress has directed that "[t]he court shall impose a sentence sufficient, <u>but not greater than necessary</u>, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a) (emphasis added). This sufficient-but-not-greater-than-necessary requirement is the "primary directive" of the sentencing statute. *United States v. Ranum*, 353 F.Supp.2d 984, 986 (E.D. Wis. 2005); *accord United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006) ("statutory mandate").

16. This Court is required to "'impose a sentence sufficient, but not greater than necessary,' to achieve the goals of sentencing." *Kimbrough*, 128 S. Ct. at 570.

17. In resentencing Mr. Simpson, this Court should consider whether a guideline sentence would be greater than necessary to satisfy the purposes of sentencing.

18. *Apprendi* Considerations. In a series of cases beginning in 1999, the Supreme Court examined the historical roots of the right to jury trial in both the original Constitution and the Bill of Rights. The Court concluded that the right to jury trial is both an individual right and a structural allocation of power to the people, and held that, in order to give it meaningful content, any fact that exposes a defendant to greater potential punishment must be found by a jury beyond a reasonable doubt. *Jones v. United States*, 526 U.S. 227 (1999); *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004); *United States v. Booker*, 543 U.S. 220 (2005).

19. In *Apprendi* the Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." 530 U.S. at 490.

20. In *Blakely* the Court made clear that the "statutory maximum" is not the maximum term of years a court could impose under a statute or a class of crimes. Instead, it is the maximum

sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. It is not the maximum sentence a judge may impose after finding additional facts, but the maximum the judge may impose without any additional findings. When a judge inflicts punishment based on facts that were neither admitted by the defendant nor found by a jury, the sentence violates the defendant's right to trial by jury.

21. In *Booker* the Court confirmed that the right to have a jury find facts that are essential to the punishment "is implicated whenever a judge seeks to impose a sentence that is not solely based on facts reflected in the jury verdict or admitted by the defendant." 543 U.S. at 232.

22. In resentencing Mr. Simpson, this Court should consider that the total drug amount was neither found by a jury nor admitted by Mr. Simpson.

23. The Court should also consider that the total drug amount was found by a preponderance of the evidence, not beyond a reasonable doubt.

24. *Kimbrough* Considerations. In *Kimbrough* the Supreme Court approved a district court's variance from the guideline sentencing range based on the court's conclusion that the 100:1 crack/powder ratio "itself created an unwarranted disparity within the meaning of section 3553(a)" 128 S. Ct. at 575. The Court rejected the Government's argument that the crack guideline can be interpreted in any way that renders it effectively mandatory: "[U]nder Booker, the cocaine Guidelines, like all other Guidelines, are advisory only; and . . . the Court of Appeals erred in holding the crack/powder disparity effectively mandatory." The Court also rejected the Government's argument that abandoning the 100:1 ratio would result in sentencing disparities: "To reach an appropriate sentence, these disparities must be weighed against the other section 3553(a) factors and any unwarranted disparity created by the crack/powder ratio itself." *Id.* at 574.

25. In *Kimbrough* the Supreme Court identified three major issues connected with the

crack/powder disparity. First, the disparity was based on "assumptions about the relative harmfulness of the two drugs" that "more recent research and data no longer support." *Id.* at 568 (citing U.S.S.C. *Report to Congress: Cocaine and Federal Sentencing Policy* at 91 (May 2002) and U.S.S.C. *Report to Congress: Cocaine and Federal Sentencing Policy* at 8 (May 2007)). Second, the disparity "leads to the anomalous result that retail crack dealers get longer sentences than the wholesale drug distributors who supply them with powder cocaine from which their crack is produced," and thus "is inconsistent with" congressional policy to punish major drug dealers more severely than low-level dealers. *Id.* (citing U.S.S.C. *Special Report to Congress: Cocaine and Federal Sentencing Policy* at 66-67, 174 (Feb. 1995)). Third, the disparity "fosters disrespect for and lack of confidence in the criminal justice system because of a widely-held perception that it promotes unwarranted disparity based on race." *Id.* (citing *Report to Congress: Cocaine and Federal Sentencing Policy* at 103). The Court also cited the Commission's own conclusions that this disparate treatment of crack offenders was "generally unwarranted" and "fail[ed] to meet the sentencing objectives set forth by Congress in both the Sentencing Reform Act and the 1986 Act." *Id.* at 567-68.

26. The Court also noted that the 2007 crack amendment does not fully rectify these problems. Quoting the Commission, the Court remarked that the "modest amendment [still] yields sentences for crack offenses between two and five times longer than sentences for equal amounts of powder," *id.* at 569, and that the Commission has recommended the ratio be "'substantially' reduced,'" *id.* at 568. It also noted that the Commission has described the amendment as "'only . . . a partial remedy' for the problems generated by the crack/powder disparity." *Id.* at 569. The crack guideline as amended "now advances a crack/powder ratio that varies (at different offense levels) between 25 to 1 and 80 to 1," and the Commission has recommended a ratio of, at most, 20 to 1.

*Id.* at 573; *see also id.* at 569.

27. Because the amended guideline still results in sentences that are based on an unwarranted disparity and fails to serve the purposes of sentencing, this Court cannot automatically assume that a sentence under the amended guideline would necessarily satisfy the requirements of Section 3553(a).

28. In resentencing Mr. Simpson, this Court should consider that the amended crack/powder disparity is still flawed and overly harsh.

WHEREFORE, Defendant Simpson asks the Court to reduce his sentence in accordance with the facts and principles of law cited above, suggesting that the 120-month statutory minimum would be the most appropriate sentence.

> For AGRON MITCHELL SIMPSON, Defendant
> s/James Bryson Clements
> 1503 Brady Street
> Davenport, Iowa 52803-4622
> TEL 563-323-9715
> FAX 563-323-7452
> EMAIL jbclements@iabar.org

PROOF OF SERVICE

I certify that on 21 May 2008 I filed this document with the clerk of this Court through the CM/ECF system. All participants in this case are registered CM/ECF users, and service will be through the CM/ECF system.

> s/James Bryson Clements

cc: Agron M. Simpson
     file (SIMPSONam6077.01)